# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| POWERHOUSE EQUIPMENT & ENGINEERING CO., INC. | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 19-12144 |
| v. | : | **OPINION** |
| AAA MOBILE BOILER, INC. | : | |
| Defendant. | : | |

This matter is before the Court on Plaintiff/Counterclaim Defendant's Motion for Judgment on the Pleadings [Dkt. No. 9] pursuant to Fed. R. Civ. Pro. 12(c). Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, the Court will grant in part and deny in part the Plaintiff/Counterclaim Defendant's Motion to for Judgment on the Pleadings.

## I.    Background

This case concerns monies allegedly owed under an Equipment Rental Master Contract Agreement (the "Lease") between Plaintiff/Counterclaim Defendant, Powerhouse Equipment & Engineering Co., Inc. ("Powerhouse"), and Defendant/Counterclaim Plaintiff, AAA Mobile Boiler, Inc. ("AAA"). Under the Lease, "Powerhouse agreed to lease various pieces of equipment to AAA in furtherance of AAA's work to be performed at the Osborn Correctional Institution, Connecticut Department of Correction, located at 175 Bilton Road in Somers, Connecticut" (the "Project"). [Dkt. No. 7 ("Counterclaim") ¶ 5]. The Lease included the rental of "a trailer-

mounter boiler, and related services that included start-up, training, and remote monitoring." [Dkt. No. 1 ("Compl.") ¶ 9]. The Lease's rental term expired in April 2019, and AAA returned the equipment to Powerhouse. (Id. at ¶ 11). AAA has paid approximately $42,517.00 to Powerhouse under the Lease. (Id. at ¶ 12). At this time, Powerhouse claims that AAA has failed to pay its balance due and owed, amounting to $97,743.00.

AAA alleges that it performed its obligations under the Lease, but following its performance on the Project, the Connecticut Department of Correction (the "Project Owner") notified AAA that its work was deficient and/or defective. The Project Owner claimed the work AAA completed, resulted in damage to the facilities. (Counterclaim ¶¶ 7-8). Specifically, the Project Owner claims $106,635.04 in damages to heat exchangers, and therefore, is withholding payment to AAA in the amount of $265,900.00. (Id. at ¶ 9-10). AAA now claims that Powerhouse failed to provide AAA with equipment, training, and service that was free from defect.

On May 6, 2019, Powerhouse filed a Complaint in this Court against AAA Mobile Boiler, Inc. seeking recovery of the monies owed, alleging claims for Breach of Contract (Count One), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Two), Unjust Enrichment (Count Three), Quantum Meruit (Count Four), and "Book Account" (Count Five). [Dkt. No. 1]. AAA filed an Answer to the Complaint, asserting Affirmative Defenses and alleging Counterclaims against Powerhouse for Breach of Contract (Counterclaim Count One) and Negligence (Counterclaim Count Two). [Dkt. No. 7]. Plaintiff and Counterclaim Defendant, Powerhouse, filed a Motion for Judgment on the Pleadings seeking a judgment in its favor for the debt owed, attorneys' fees, interest, and costs. [Dkt. No. 9]. That motion has been fully briefed.

## II. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings. The movant under Rule 12(c) must show clearly that no material issue of fact exists and that it is entitled to judgment as a matter of law. Rosenau v. Uniford Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)). A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). Turbe v. Government of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, the pleading must allege facts that raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Fed. R. Civ. P. 8(a)(2). While a court must accept as true all allegations in the complaint, and view them in the light most favorable to non-movant, Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible.[1] Phillips, 515 F.3d at 234. "Where there are well-pleaded factual allegations, a court should assume their veracity and then

---

[1] When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration. See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

determine whether they plausibly give rise to an entitlement A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged to relief." Iqbal, 556 U.S. at 678.

### III.  Analysis

Powerhouse initially argues that it is entitled to judgment on the pleadings because AAA does not dispute that the work required under the Lease was done or that the balance to Powerhouse remains unpaid. [Dkt. No. 9-3 pp. 12-14]. Powerhouse also submits that the express terms of the Lease preclude AAA's counterclaims, denials, and defenses, leaving no justification for its failure to pay Powerhouse. (Id. at pp. 14-19; see also Dkt. No. 13).  In opposition, AAA argues that it not only disputes material allegations, but asserts counterclaims that are not barred by the Lease, or otherwise. AAA stresses that Powerhouse's motion is premature and that further discovery is required on remaining fact-intensive inquires.

As an initial matter, the Court finds that Plaintiff has established that it is entitled to judgment on the pleadings on both of AAA's counterclaims. Under its first Counterclaim, AAA alleges that Powerhouse is liable for breach of contract by failing to ensure that the equipment, materials, training, and services were free from defect; failing to perform the work pursuant to the binding terms of the Lease; and refusing to provide notice to their insurance carrier of the claims by AAA, resulting in the Project Owner's withholding of significant payments to AAA.

Under New Jersey law, a plaintiff must establish the following elements to prevail on a breach of contract claim: "(1) a contract between the parties; (2) a breach of that

4

contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, Inc., 507 F.3d 188, 204 (3d Cir. 2007).

"The Supreme Court of New Jersey has instructed that '[w]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and we must enforce those terms as written.'" Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc., 737 F.3d 879, 900 (3d Cir. 2013) (quoting Kutzin v. Pirnie, 591 A.2d 932, 936 (N.J. 1991)). Here, it is undisputed that the Lease is a contract between the parties. AAA acknowledges that Powerhouse performed under the Lease, in that it provided equipment and services to AAA, which it used to complete the Project. [Dkt. No. 7 ¶¶ 5-8]. The Connecticut Department of Correction claims that the work performed using such equipment caused damages to its facilities. In return, AAA contends that such damage is a result of Powerhouse's actions or inactions, that it failed to provide defect free equipment, training, and service, and seeks to recover the cost of the damage to the facilities. (Id. at ¶¶ 10-14). Powerhouse contends, however, that AAA's breach of contract claim is precluded because AAA seeks consequential damages, which it explicitly waived under the Lease.

"Direct damages refer to those which the party lost from the contract itself—in other words, the benefit of the bargain—while consequential damages refer to economic harm beyond the immediate scope of the contract." Atl. City Assocs., LLC, v. Carter & Burgess Consultants, Inc., 453 F. App'x 174, 179 (3d Cir. 2011). In commercial leases,

> Consequential damages may be liquidated under 12A:2A-504, or may otherwise be limited, altered, or excluded unless the limitation, alteration, or exclusion is unconscionable. Limitation, alteration, or exclusion of consequential damages for injury to the person in the case of consumer

5

> goods is prima facie unconscionable but limitation, alteration, or exclusion of damages where the loss is commercial is not prima facie unconscionable.

N.J. Stat. Ann. § 12A:2A-503. The parties' Lease provides, "in no event shall [Powerhouse] be liable to [AAA] or any third party for any incidental, consequential, liquidated or special damages, including, without limitation, loss of use, loss of sales, loss of production, loss of profits or revenues, loss of business opportunity, interest charges, or cost of capital." (Counterclaim, Ex. A, Standard Terms and Conditions ¶ 18).

AAA does not dispute that it seeks consequential damages, rather it argues that the waiver provision of such damages may be unconscionable. [Dkt. No. 12 at p. 13]. While AAA is not obligated to prove unconscionability at this early stage, the pleadings do not allege that this provision, or any part of the Lease, is unconscionable. Furthermore, AAA's Answer and Counterclaim lack any facts that give rise to a "potential" for unconscionability. (Id.) AAA simply provides no plausible allegations that the wavier agreed to in the Lease is unconscionable. Indeed, AAA concludes that whether the "waiver clause is unconscionable will depend on a myriad of factors that have been excluded from the pleadings, and can only be unearthed through discovery." (Id. at 14). Such an argument does not suffice to raise a right of relief beyond mere speculation, rather AAA recognizes unconscionability is only a mere possibility. Therefore, as pled, AAA's damages are not cognizable. Accordingly, AAA fails to state a claim for breach of contract.

AAA's Second Counterclaim alleges that Powerhouse was negligent in the execution of its obligations under the Lease in providing defective equipment. Powerhouse submits that a negligence claim is precluded by the language in the Lease. Under the Lease, AAA agreed to indemnify, defend, and hold Powerhouse harmless

"against all claims, losses, actions, costs, damages and liabilities of any nature whatsoever, including but not limited to negligence, bodily injury, death, tort and strict liability, including attorney's fees, arising out of, relating to, resulting from the Lessee's use and/or transportation of the Equipment by Lessee during the term of this Lease, except to the extent caused by the Lessor's gross negligence or willful misconduct." (Counterclaim, Ex. A, Standard Terms and Conditions ¶ 11 (emphasis added)). Here, AAA does not allege any claims for gross negligence or willful misconduct.

Moreover, Powerhouse also argues that this claim fails because AAA has not established Powerhouse owed any independent duty to it. [Dkt. No. 9-3 at 18]. "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 280 (N.J. 2002) see also Int'l Minerals & Mining Corp. v. Citicorp N. America, Inc., 736 F. Supp. 587, 597 (D.N.J. 1990) ("It has long been the law that remedies in tort relating to a breach of contract may not be maintained in addition to those established under the Lease itself in the absence of any independent duty owed by the breaching party to the plaintiff."). Here, AAA alleges that Powerhouse owed a duty to ensure performance of its duties under the Lease were completed in a "workmanlike manner," and breached that duty by providing defective equipment, the same breach alleged in its contractual claim. Therefore, AAA does not allege a duty independent and irrespective of their contractual relationship. Thus, AAA's negligence claim must fail.

The Court, however, finds that Powerhouse fails to establish it is entitled to judgment as a matter of law on its claims against AAA at this early stage of the case. According to Powerhouse's Complaint, Powerhouse "has sent AAA invoices for the amount due and owing under the terms of the Lease. AAA has paid approximately

7

$42,517.00 of the amount owed, but there remains due and owing to Powerhouse the balance of $97,743.00. Powerhouse has demanded from AAA payment of the balance, but AAA has neglected and refused to pay the same." [Dkt. No. 1 ¶ 12]. AAA specifically denied such allegations in its Answer. [Dkt. No. 7 ¶ 12]. "Federal Rule of Civil Procedure 8(b) allows a party to contest the particulars of a complaint simply by issuing a general denial in a responsive pleading." In re Sterten, 546 F.3d 278, 283 (3d Cir. 2008). Notably, AAA further denies that it breached the Lease with Powerhouse, that Powerhouse conferred any benefit on AAA, "that said benefits enriched AAA, and that AAA's alleged retention of the benefit without payment would be unjust." (Id. at ¶¶ 20, 23, 25, 27-30, 34; Dkt. No. 12 pp. 8-9).

AAA also asserts several affirmative defenses, which it argues should be tested through discovery. In response, Powerhouse contends that "the contract in this case establishes Powerhouse's right to relief and precludes the defenses AAA has raised." [Dkt. No. 13 at p. 6]. The Court finds that the Lease precludes certain defenses. Specifically, the Lease precludes AAA's defense that Powerhouse's claims are barred by the doctrine of setoff. Under the Lease, "[AAA's] obligations to pay all rent and other amounts due under this Lease is absolute and unconditional under all circumstances whatsoever and shall not be subject to any set-off or reduction for any reason whatsoever." (Counterclaim, Ex. A). Thus, AAA is not entitled to any setoff.

Next, Powerhouse emphasizes that AAA explicitly agreed to inspect the equipment Powerhouse provided under the Lease within five (5) days after delivery, and to "notify [Powerhouse] in writing within that period of any defects or other objections to the Equipment." The Lease provides that if written notice is not given, "[AAA] will be conclusively presumed to have accepted the Equipment in good condition and repair."

8

(Counterclaim, Ex. A, Standard Terms and Conditions ¶ 6). To that end, Powerhouse alleges that AAA failed to notify it of any defect under the timeframe set forth in the Lease.

This provision in the Lease, however, does not preclude the additional affirmative defenses AAA asserts. Those defenses include, estoppel, waiver, unclean hands, and failure to mitigate damages. To be sure, "an affirmative defense generally 'need not be articulated with any rigorous degree of specificity, and is sufficiently raised for purposes of [Federal] Rule [of Civil Procedure] 8 by its bare assertion.'" Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 218 (3d Cir. 2017) (quoting Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 361 (8th Cir. 1997)). Accordingly, AAA sufficiently asserts affirmative defenses that would affect Powerhouse's entitlement to monies allegedly owed. Furthermore, "[A] plaintiff's Rule 12(c) motion will not be granted if defendant's answer "raises issues of fact that, if proved, would defeat recovery." Lake v. Aetna Life Ins. Co., 54 F. Supp. 3d 331, 335 (D.N.J. 2014) (citations omitted). AAA's Answer raises issues of material fact as to whether Plaintiff is owed monies by denying key allegations and raising defenses to Powerhouse's claims, thereby precluding a judgment on the pleadings.

## IV.   Conclusion

For the forgoing reasons, Plaintiff's Motion for Judgment on the Pleadings will be granted in part and denied in part.

An appropriate order shall issue.

Dated: May 29, 2020

      /s/ Joseph H. Rodriguez
      Hon. Joseph H. Rodriguez,
      UNITED STATES DISTRICT JUDGE